UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC COAST CONTAINER, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ROYAL SURPLUS LINES INSURANCE COMPANY, a Delaware corporation,<br><br>    Defendant. | Case No. C08-0278MJP<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL EVIDENCE |

  Plaintiff Pacific Coast Container, Inc. ("Pacific Coast") moves for partial summary judgment on the issues of bad faith, violation of Washington's Consumer Protection Act ("CPA"), and violation of the Insurance Fair Conduct Act ("IFCA"). Pacific Coast also requests a declaration that the insurance policy provides coverage for the amount of a settlement it agreed to pay to an individual in earlier litigation. Pacific Coast does not request summary judgment on the issues of treble damages, bad faith damages, and litigation costs beyond reasonable attorneys' fees. Defendant Royal Surplus Lines Insurance Co. ("Royal") has filed a motion for leave to file notice of supplemental evidence related to Pacific Coast's summary judgment motion. The Court DENIES Pacific Coast's motion for summary judgment and GRANTS Royal's motion for leave to file notice of supplemental evidence.

**Background**

  This case arises from a settlement that Pacific Coast paid to Alonzo Lucatero ("Lucatero") in resolution of Lucatero's negligence claims against Pacific Coast. Pacific Coast held liability insurance with Royal. Pacific Coast argues that a certain part of its insurance contract, the Stop

ORDER – 1

Gap Employers Liability endorsement (the "stop gap endorsement"), provides coverage for its liability to Lucatero. Pacific Coast argues that Royal improperly denied coverage and acted in bad faith by failing to disclose the existence of the stop gap endorsement when disputing Pacific Coast's insurance claim. The following facts are undisputed unless stated otherwise.

Pacific Coast is a California corporation with operations in Washington. (See Peters Decl., p. 1.) Accord Human Resources, Inc. ("Accord") provided workers to Pacific Coast to fulfill Pacific Coast's staffing needs. (Crane Decl., Ex. 1, pp. 3, 5.) Lucatero was one of the workers provided by Accord to work at Pacific Coast's facility in Seattle. (Crane Decl., Ex. 2, p. 18.)

Lucatero was involved in a forklift accident while working on Pacific Coast's premises and suffered significant injuries. (Crane Decl., Ex. 2, p. 19.) Accord provided Lucatero's workers' compensation coverage. (Peters Decl., pp. 1–2.) Pacific Coast states, and Royal does not dispute, that Lucatero filed a workers' compensation claim and received medical and time loss benefits. (Plaintiff's Mot. for Partial SJ ("Plaintiff's Mot."), p. 2.) Lucatero later filed a complaint against Pacific Coast, alleging that he was a business invitee on Pacific Coast's property and that Pacific Coast was negligent. (Crane Decl., Ex. 2, pp. 18–19.)

Royal supplied Pacific Coast with commercial general liability insurance. (Crane Decl., Ex. 3.) The main body of the insurance contract ("main contract") obligates Royal to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . ." (Id. at 26.) The insurance coverage excludes bodily injury to "employees," as defined in the contract. (Id. at 27.) The word "employee," as defined in the contract, includes a "leased worker," but does not include a "temporary worker." (Id. at 36.) "Leased worker" is defined as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. 'Leased worker' does not include a temporary worker." (Id.) "Temporary worker" is defined as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (Id. at 38.) The insurance contract also contains a stop gap endorsement that insured Pacific Coast against certain lawsuits by certain types of employees. (Id. at 57.) The meaning of the term "employee" in the stop gap endorsement is disputed, as are

ORDER – 2

other terms in the endorsement.

In a letter to Pacific Coast on April 6, 2006, Royal agreed to defend Pacific Coast against Lucatero's lawsuit under a reservation of rights. (Love Decl., p. 1 & Ex. 1.) Royal provided Pacific Coast with legal counsel to defend against Lucatero's suit. (Love Decl., p. 2, see also Plaintiff's Mot., p. 5.) On August 6, 2007, Royal stated that it would be denying coverage because it had determined that Lucatero was a "leased worker" and therefore an "employee" within the meaning of the insurance contract. (Love Decl., Ex. 4.) Royal stated that it would continue defending against Lucatero's claim through mediation and trial. (Love Decl., Ex. 7.) Pacific Coast settled Lucatero's case for $150,000 sometime between August 21 and October 1, 2007. (Love Decl., pp. 3–4).

During the months following Royal's August 6 letter, Royal and Pacific Coast disputed whether Lucatero was a "leased worker" that was excluded under the insurance policy or a "temporary worker" that was not excluded. (See Love Decl., Ex. 5, 8, 10, 11, 12.) Neither party mentioned or made reference to the stop gap endorsement. On December 21, 2007, Pacific Coast sent a letter to Royal mentioning the endorsement and stating that it applied, and therefore that the insurance policy covered Lucatero's claim. (Love Decl., Ex. 13.) The letter stated that Royal violated numerous state regulations by denying Pacific Coast's insurance claim and by failing to disclose the endorsement to Pacific Coast. On January 14, 2008, Royal responded with a letter stating that the endorsement did not apply. (Love Decl., Ex. 14.)

Pacific Coast filed a complaint against Royal in King County Superior Court on January 18, 2008. (Docket #1, Ex. A.) The complaint states four causes of action: (1) breach of contract, (2) bad faith, (3) violation of the CPA, RCW 19.86, and (4) violation of the IFCA, RCW 48.30.010 et seq. Royal filed a Notice of Removal on the basis of diversity jurisdiction on February 15, 2008. (Docket #1.)

Pacific Coast now moves for partial summary judgment on its claims of bad faith, violation of the CPA, and violation of the IFCA. Pacific Coast also requests a declaration that the stop gap endorsement provides coverage for the amount of Pacific Coast's $150,000 settlement.

ORDER – 3

**Discussion**

**I.   Summary Judgment Standard**

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

**II.   Meaning of the Stop Gap Endorsement**

Pacific Coast first requests a declaration that the stop gap provision in the policy provides coverage for the settlement that Pacific Coast paid to Lucatero. (Plaintiff's Mot., p. 17.) The parties dispute the meaning of several terms in the stop gap provision.

**A.   Interpretation of Insurance Contracts Under Washington Law**

The interpretation of insurance policies is a question of law. Weyerhauser Co. v. Aetna Cas. & Sur. Co., 123 Wn.2d 891, 897 (1994). The language of the policy is to be interpreted in accordance with the way it would be understood by the average person, rather than in a technical sense. Id. An ambiguity exists in an insurance contract if the language is fairly susceptible to two different reasonable interpretations. Id. When the parties' language is ambiguous, courts attempt to enforce the parties intent. Greer v. Nw. Nat'l Ins. Co., 109 Wn.2d 191, 200 (1987). Factors to consider in determining intent include the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, and the reasonableness of the parties' interpretations. Id. If the court cannot resolve an ambiguity by resort to extrinsic evidence, it will apply the rule that ambiguities in insurance contracts are construed in favor of the insured. Weyerhauser, 123 Wn.2d at 897.

Ambiguous exclusionary clauses in insurance contracts are strictly construed against the insurer. McDonald Indus., Inc. v. Rollins Leasing Corp., 95 Wn.2d 909, 913 (1981). Washington courts typically give ambiguous exclusionary clauses "the reasonable interpretation

ORDER – 4

most favorable to the insured." Id. at 914.

### B. The "Legally Obligated to Pay" Language

Both the stop gap endorsement and the main contract limit Royal's obligation to "those sums that [Pacific Coast] become[s] legally obligated to pay as damages." (Crane Decl., Ex. 3, pp. 26, 57.) Royal argues that it is unclear whether Pacific Coast would have been entitled to workers' compensation immunity had Lucatero's case against Pacific Coast gone to trial. If Pacific Coast would have been entitled to immunity, Royal argues, then Royal cannot be held liable for the $150,000 settlement because Pacific Coast was not "legally obligated to pay" the settlement. Royal argues that the Court must hold a trial to decide this issue.

This argument fails. It is well-established in Washington that when an insurer defends a claim under a reservation of rights, the insured has the right to determine when to settle. See Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 389 (1986). The insurer is liable for the amount of the settlement, provided that it is reasonable and paid in good faith. Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 400 (2007). Payments made by an insured to a plaintiff pursuant to a reasonable settlement agreement are considered to be payments made under a legal obligation. See Evans v. Cont'l Cas. Co., 40 Wn.2d 614, 628 (1952). There is no evidence that the parties here attempted to contract around this default rule.

### C. The Meaning of the Term "Any Employee of Yours"

The parties dispute how to define the term "any employee of yours" in the stop gap endorsement. The endorsement states:

> We will pay those sums that you become legally obligated to pay as damages because of "bodily injury" caused by an accident or disease to <u>any employee of yours</u> . . . provided the employee is reported and declared under a workers' compensation fund of one or more of the following states: Washington . . . .

(Crane Decl., Ex. 3, p. 57 (emphasis added).)

Pacific Coast argues that the word "employee" should be given the same meaning in the stop gap endorsement as it has in the main contract, i.e. that "employee" should include leased workers, but not temporary workers. The endorsement contains a clause incorporating the definitions section of the main contract, including the definition of "employee" as a term of art, i.e., including "leased workers" but excluding "temporary workers." (Crane Decl., Ex. 3, pp. 36, 59.) Pacific Coast alleges that, by its own terms, the endorsement provides that the word

ORDER – 5

"employee" should be considered a term of art.

Royal argues that "employee" should be given a standard dictionary definition. Royal provides three reasons based upon the text of the contract why the term "employee" in the endorsement was not intended to be a term of art. First, unlike the references to "employee" in the main contract, the word "employee" in the endorsement is not within quotation marks. Other terms of art in the endorsement are contained within quotation marks, but the term "employee" is not, implying that it should not be considered a term of art. Second, the first page of the main contract states: "[o]ther words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V)."  (Crane Decl., Ex. 3, p. 26.)  This language implies that words not in quotation marks should not be given any special meaning. Third, the endorsement uses the phrase "employee of yours." The first page of the policy states: "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured . . . ."  The only named insured is Pacific Coast. According to Royal, the inclusion of the words "of yours" after "employee" demonstrates that the endorsement refers to an employee of Pacific Coast, in the traditional dictionary sense, rather than to a leased worker.

Both Pacific Coast and Royal's interpretations of the "employee" language in the endorsement are reasonable. The endorsement's use of "employee" is ambiguous. Examining the likely intent of the parties when they entered into the endorsement, Pacific Coast argues that the objective of the endorsement was to close all the "gaps" in coverage, so that the insurance policy would cover Pacific Coast's liability to everyone in its facility.

Pacific Coast's explanation of the endorsement's purpose best matches the probable intent of the parties. Given that the main contract covered Pacific Coast's liability to non-employees, and the stop gap endorsement covered liability to employees, it is unlikely that the parties intended to leave a gap in coverage, so that leased workers would not be covered under either the main contract or the stop gap endorsement. The parties more likely intended the stop-gap endorsement to fully cover the gap left by the main contract, so that the policy would insure Pacific Coast against lawsuits regardless of the plaintiff's employee status.

The definition of "employee" as a term of art in the stop gap endorsement also best matches the way the term would be understood by an average person entering into the contract.

ORDER – 6

An average person would note that "employee" is used as a term of art in the main contract, that the endorsement uses the same word, and that the endorsement specifically states that the definitions in the main contract also apply to the endorsement. An average person would also realize that the main contract does not cover employees and that the endorsement covers only employees. From this, the average person would reasonably understand that the combination of the main contract and the endorsement would cover all persons, employees and non-employees alike, and would not leave a "gap" in coverage for leased workers. An average person, therefore, would consider the word "employee" in the stop gap endorsement to have the same meaning as in the main contract, whether or not the word was placed within quotation marks.

The Court finds that the word "employee" in the stop gap endorsement has the same definition as in the main contract—it includes "leased workers," but not "temporary workers."

**D.      The Workers' Compensation Benefit Exclusion in the Endorsement**

The parties further dispute whether an exclusion in the stop gap endorsement operates to deny coverage to Pacific Coast's claim. Paragraph 2.e of the endorsement (the "exclusion") excludes from coverage "any claim brought against you by or on behalf of any employee for 'bodily injury' or death resulting therefrom (1) if benefits therefore [sic] under any workers' compensation or occupational disease law are accepted by or on behalf of such employee." (Crane Decl., Ex. 3, p. 58.) Pacific Coast admits that Lucatero received workers' compensation benefits for his injuries through Accord's workers' compensation coverage. (Plaintiff's Mot., p. 2.)

Pacific Coast argues that the exclusion does not apply because, although Lucatero received workers' compensation benefits from the state as an employee of Accord, he did not receive any benefits from his separate and independent negligence action against Pacific Coast. Unless an employer self-insures, an employee seeking workers' compensation benefits must file a claim with the Washington State Department of Labor and Industries to obtain workers' compensation benefits, regardless of who covers the person's workers' compensation premiums. RCW 51.28.020; Michael J. Killeen, Employment in Washington § 9-2(f) (4th ed. 1998). Pacific Coast admits that Lucatero followed this procedure in the present case. (Plaintiff's Mot., p. 2.) Pacific Coast's argument assumes that an employee's workers' compensation claim, filed with the

ORDER – 7

state, is necessarily separate and independent from that employee's claim brought against the employer in court. Under Pacific Coast's logic, the exclusion would never apply. If an employee does not file a workers' compensation claim, the exclusion does not apply on its face, because the employee will not receive any benefits. If, on the other hand, an employee does file such a claim, under Pacific Coast's logic that claim is separate and independent from any suit the employee might bring against the employer, so the exclusion is inapplicable. The Washington Supreme Court interprets exclusionary language in insurance contracts in a manner that avoids the exclusion being rendered meaningless. See Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 89 (1994). The Court declines Pacific Coast's invitation to adopt its interpretation of the exclusion.

Pacific Coast cites Am. Safety Indem. Co. v. Stollings Trucking Co., 450 F. Supp. 2d 639 (S.D. W.Va. 2006) to support its argument. The defendant in Stollings had an insurance policy that included a stop gap endorsement with an exclusionary provision almost identical to the one at issue here. Id. at 647. In Stollings, the plaintiff obtained workers' compensation benefits under Stollings' workers' compensation coverage, but nonetheless sued Stollings for negligence and intentional exposure to injury. Id. at 644, 647. The court held that the exclusionary language in the stop gap provision did not apply, but did not provide a clear reason for its decision. See id. at 648.

Stollings is inapposite. The court in Stollings premised its holding on the fact that workers' compensation benefits were "not available" for plaintiff's negligence and intentional exposure claims. Id. at 647. Although it is not completely clear from the court's order, it appears that West Virginia's workers' compensation program was not broad enough in scope to cover the employer's negligence and intentional exposure claims. In Washington, by contrast, the workers' compensation scheme makes available benefits for the type of negligence claims that Lucatero made against Pacific Coast, and Lucatero received such benefits. See Michael J. Killeen, Employment in Washington § 9-2 (4th ed. 1998) (stating that, under Washington's system, employers are immune from lawsuits by employees for nonintentional injuries, and that the system eliminates the common law system that permitted an employee to sue for negligence, giving employees workers' compensation benefits instead).

ORDER – 8

It is not clear whether the phrase "benefits therefore" in the exclusion means "benefits for that bodily injury" or "benefits for that claim." Either way, the exclusion unambiguously applies to instances where an employee of the insured (including a leased worker) is injured, makes a claim to the Washington Department of Labor and Industries, accepts workers' compensation benefits, and then brings a negligence action against the insured for the same injury. The exclusion makes no distinction based upon who pays the employee's workers' compensation premiums, and the Court declines to read such a distinction into the policy. As discussed above, an employee's legal claim against an employer cannot be considered as being necessarily separate and independent from that employee's claim to the Washington Department of Labor and Industries, or the exclusion would have no possible application.

Lucatero indisputably accepted workers' compensation benefits for the bodily injury that he suffered. Lucatero filed a negligence claim against Pacific Coast arising out of the same injury. The exclusion precludes Pacific Coast from obtaining coverage under the endorsement. Pacific Coast is not entitled to a declaration that the stop gap endorsement provides coverage for its $150,000 settlement of Lucatero's negligence claim.

### III.    The Bad Faith Claim

Pacific Coast alleges that Royal acted in bad faith by failing to disclose the existence of the stop gap endorsement. Washington Administrative Code ("WAC") 284-30-350 requires insurers to fully disclose "all pertinent benefits, coverages or other provisions of an insurance policy." An insured may bring a bad faith claim against an insurer regardless of whether the insurer was ultimately correct in determining that coverage did not exist. Shields v. Enterprise Leasing Co., 139 Wn. App. 664, 676 (2007).

Under Washington law, the duty of good faith requires fair dealing and equal consideration for the insured's interests. Tank, 105 Wn.2d at 387. The determinative question when evaluating whether an insurer acted in bad faith is "reasonableness of the insurer's actions in light of all the facts and circumstances of the case." Anderson v. State Farm Mut. Ins. Co., 101 Wn. App. 323, 329–30 (2000). The reasonableness of an insurer's actions is typically a question of fact. See Indus. Indem. Co. of the Nw. v. Kallevig, 114 Wn.2d 907, 917 (1990); Thomas V. Harris, Washington Insurance Law § 7.1 (2006). An insurer may avoid bad faith liability for

ORDER – 9

failure to disclose pertinent policy coverage if it acts in a reasonable manner. See Anderson, 101 Wn. App. at 331. An insured may not prevail on a bad faith claim when an insurer has made an honest, good faith mistake. Coventry Assocs. v. Am. States Ins. Co., 136 Wn.2d 269, 280 (1998).

There is evidence in the record from which a finder of fact could conclude that Royal's failure to specifically mention the endorsement was reasonable. Viewing the facts in the light most favorable to Royal, a trier of fact could conclude that Royal did not mention the stop gap endorsement to Pacific Coast because it never crossed Royal's mind that the endorsement might apply. Pacific Coast and Pacific Coast's counsel were both sent a copy of the insurance policy in April 2006, (East Decl. (Docket # 21), Ex. A), and they made no mention of the endorsement or its applicability until December 21, 2007, after Pacific Coast had already threatened litigation against Royal. (Love Decl., Ex. 11, 13.) This evidence could support a finding that Pacific Coast and Pacific Coast's counsel did not initially believe that the endorsement might apply either, which would lend support to the reasonableness of Royal's actions. Given that the exclusion precludes coverage under the endorsement, a trier of fact could find Royal's failure to understand that the endorsement might apply to be reasonable.

Pacific Coast argues that Anderson, 101 Wn. App. at 330–31, requires an opposite result. In Anderson, the insurer, State Farm, failed to disclose that Anderson had underinsured motorist coverage. State Farm argued that it believed that Anderson, the insured, was completely at fault for the accident, so it was not obligated to disclose the information. Id. at 330. The court noted, however, that the cause of the accident was disputed, and Anderson asserted that she had not been negligent. Id. at 331. The court held that "[n]othing in the record shows that it was reasonable for State Farm to accept as true the account of the accident given by [a witness] and to disregard as incredible the account given by its own insured." Id.

Anderson does not control the result here. In Anderson, the court concluded that there was no evidence in the record to support a finding that State Farm acted reasonably. Consequently, the court found that State Farm engaged in bad faith as a matter of law. Id. In this case, as discussed above, there is evidence in the record that supports a finding that Royal's failure to disclose was reasonable. Pacific Coast is not entitled to summary judgment on its bad

ORDER – 10

faith claim.

### IV. The Consumer Protection Act Claim

Pacific Coast argues that Royal's failure to disclose the existence of the stop gap endorsement constitutes a violation of the Consumer Protection Act ("CPA"), RCW 19.86.020. The Washington Supreme Court holds that "[a]s long as the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a bad faith or CPA claim against its insurer on the basis of a *good* faith mistake." Coventry Assocs., 136 Wn.2d at 280. Additionally, "[a]cts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 155 (1997).

Royal did not necessarily violate the CPA by failing to disclose the existence of the stop gap endorsement. As discussed above, there is a question of fact as to whether Royal's failure to mention the endorsement was in good faith. Summary judgement for Pacific Coast is not warranted on this claim.

Pacific Coast cites a state court of appeals case holding that failure to disclose a pertinent policy provision pursuant to WAC 284-30-350 constitutes an unfair practice under the CPA. Anderson, 101 Wn. App. at 332. Washington courts have not definitively addressed whether an insurance policy provision can be "pertinent," as provided in the regulation, even if the provision is ultimately found to be inapplicable as a matter of law. Compare Shields, 139 Wn. App. at 676 (holding that an insurer did not violate WAC 284-30-350 in a case where the court held that an insurer did not have a legal obligation to provide coverage), with Anderson, 101 Wn. App. at 331 (holding that an insurer violated WAC 284-30-350 by failing to disclose coverage even though whether the coverage applied depended upon the resolution of disputed facts). Anderson does not mandate a conclusion that Royal violated WAC 284-30-350 or the CPA. In Anderson, the coverage indisputably applied as a matter of law under the insured's version of the facts. Here, the exclusion in the stop gap endorsement precludes coverage under the endorsement as a matter of law. To hold that Royal violated the CPA despite the possibility that Royal acted in good faith, and despite the fact that the stop gap endorsement does not provide coverage, would be

ORDER – 11

inconsistent with the Washington Supreme Court's directives in <u>Coventry Associates</u> and <u>Leingang</u>.

## V.     The Insurance Fair Conduct Act Claim

Pacific Coast argues that Royal's failure to disclose the existence of the stop gap endorsement constitutes a violation of the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015. The IFCA allows certain insured parties to obtain treble damages when an insurer unreasonably denies a claim. <u>See</u> RCW 40.30.015. The IFCA entered into effect on December 6, 2007. This Court has held that the IFCA is not retroactive. <u>See</u> <u>Aecon Bldgs., Inc. v. Zurich N. Am.</u>, 2008 WL 895978, at *3 (W.D. Wash. 2008). Because Royal denied Pacific Coast's claim before December 6, 2007, Pacific Coast does not have a cause of action under the IFCA. (<u>See</u> Crane Decl., Ex. 7.)

Pacific Coast argues that the IFCA applies because Pacific Coast sent a letter to Royal on December 17, 2007 as part of the parties' ongoing dispute. (Crane Decl., Ex. 9.) The letter did not mention the existence of the stop gap endorsement. Pacific Coast argues that the letter violated WAC 284-30-350. Violations of WAC 284-30-350 enable an insured to seek treble damages and attorneys fees under subsections (2) and (3) of the IFCA. <u>See</u> RCW 40.30.015(2); 40.30.015(3); 40.30.015(5)(b). Pacific Coast's argument fails because the operative date in determining whether the IFCA applies is the date that a claim for coverage is denied. <u>See</u> RCW 40.30.015(1). Only subsection (1) of the statute provides insureds with a cause of action. Pacific Coast is not entitled to summary judgment on its IFCA claim.

## VI.    Royal's Motion for Leave to File Notice of Supplemental Evidence

Royal filed a notice of supplemental evidence on May 29, 2008. (Docket # 20.) The supplemental evidence includes a letter from Arthur Gallagher (a risk management services company) sending a copy of the insurance policy to Pacific Coast's counsel, with a carbon copy to Pacific Coast. (Docket # 21, Ex. A). Exhibits B, C, and D include evidence that Lucatero was a co-employee of Pacific Coast and Accord. Defendants moved for leave to file this notice of supplemental evidence on May 30, 2008. (Docket # 22.) Pacific Coast filed an opposition on June 16, 2008 arguing that Royal's motion should be denied because the supplemental evidence is not relevant. (Docket # 23.) Royal filed a reply on June 20, 2008. (Docket # 24).

ORDER – 12

The Court grants Royal's motion. As discussed in section III above, exhibit A may be relevant to demonstrate that there is a question of fact regarding whether Royal acted reasonably in failing to specifically mention the endorsement. The issue is relevant to Pacific Coast's motion for summary judgment on its bad faith and CPA claims.

**Conclusion**

The exclusion in the stop gap endorsement precludes coverage under the endorsement for Pacific Coast's insurance claim. Pacific coast is not entitled to a declaration that the stop gap endorsement provides coverage for the $150,000 settlement that Pacific Coast paid to Lucatero. Questions of fact remain as to whether Royal acted in bad faith or violated the CPA. Pacific Coast is not entitled to summary judgment on its bad faith, CPA, and IFCA claims.

The Court DENIES Plaintiff's motion for summary judgment. The Court GRANTS Defendant's motion for leave to file notice of supplemental evidence.

The clerk is directed to send a copy of this order to all counsel of record.

Dated: July 8th, 2008.

>   s/ Marsha J. Pechman
>   Marsha J. Pechman
>   United States District Judge

ORDER – 13